THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* VERNON VICKERY *et al.* Plaintiffs in Error.

*Opinion filed April 23, 1926—Rehearing denied June 2, 1926.*

1. CRIMINAL LAW—*when statements of co-defendant are admissible.* Where no motion for a separate trial is made, statements of a co-defendant out of the presence of the other defendant are admissible in evidence where the court limits the statements, when received in evidence, to the defendant making them, and where the jury are instructed that the statements are to be considered as affecting such defendant, only.

2. SAME—*what is proper argument of the prosecuting attorney.* The State's attorney, in his argument to the jury, has a right to make fair deductions and inferences from the testimony appearing in the record, and he may make statements of what he contends is proved either by direct testimony or by fair inference from the facts and circumstances proved.

WRIT OF ERROR to the Circuit Court of Kankakee county; the Hon. ARTHUR W. DESELM, Judge, presiding.

ELMER C. WILSON, and JOHN H. BECKERS, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, ANKER C. JENSEN, State's Attorney, and MERRILL F. WEHMHOFF, for the People.

Per CURIAM : The plaintiffs in error, Vernon Vickery and Cecil Vickery, were convicted of the larceny of an automobile belonging to William Bauknecht, a farmer living in Kankakee county. They bring the cause here for review, contending that the record was not sufficient to sustain the judgment, that the guilt of the defendants was not proven beyond a reasonable doubt, and assigning certain errors on admission of evidence and giving instructions.

Bauknecht's car was stolen from the garage on his farm between eight and nine o'clock on the morning of the 8th of October, 1924. At that time Vernon Vickery was working for Bauknecht and the two had gone to another farm to sow wheat. William Spies, a farmer, testified for the State that on the morning of the 8th of October he passed a man walking on the road near to and in the direction of the Bauknecht farm. The man was dressed in a uniform of some character and wore khaki-colored puttees of the kind known as spiral puttees. This witness testified that he did not see the face of the party he passed because he put up his coat in such a manner as to conceal his face. He testified that about an hour later he saw the same man driving Bauknecht's car. The State's evidence shows that Cecil Vickery on that day drove Bauknecht's car to the home of Thomas McKinley, a farmer residing near Wing, Illinois, and requested permission to leave the car there for a few days, but was told that there was no room there for it but that he might find space at the home of one Rosendahl, who lived near by. The State's evidence also shows that Cecil

Vickery left the car at Rosendahl's farm at about 11:30 o'clock on the morning of the 8th of October, 1924; that when he appeared at the McKinley farm he wore army breeches and khaki spiral puttees. The State's evidence showed that after three or four days Cecil Vickery drove the car to Wing and left it at a garage belonging to Will Hoke until the 20th day of October, when he drove it to Bradley, Illinois, and there delivered it to Vernon Vickery; that the latter took it to Joliet, where he kept it hidden under a large canvas in a gypsy's camp a short distance southwest of Joliet, where it was found. Vernon Vickery was arrested in that neighborhood.

The plaintiffs in error both testified. Cecil Vickery testified that on the day before the car was stolen Vernon called him from Bradley and told him to come to Kankakee and get his (Vernon's) car and keep it for him until he returned from Chicago; that witness came to Kankakee and got the car on the street and took it to Wing; that his brother told him that he would find it standing on the street; that he found it near where he was told it would be; that the reason for his going to McKinley's house was that he stopped to ask directions; that they asked him whose car it was, and he said it was his brother's; that he asked if the McKinleys had shed room, as he wanted to put the car in because the paint was new, and they told him they had none but thought Rosendahl had; that he afterwards took the car to Rosendahl's and later to Hoke's garage at Wing.

The State's witnesses Elmer Fleener and Archie Fleener testified that they had a conversation with Cecil Vickery and asked him as to where he got the car. Elmer testified that he replied he had gotten the car in Kankakee, and Archie testified that he also said he had stolen the car in Kankakee. Clyde Ralston testified for the State that he had ridden in the car with Cecil Vickery on either the 18th or 19th of October, and when he asked Vickery where he got the car, he replied that he had got it from a farm near

Kankakee where his brother was working. Cecil Vickery denied that he had these conversations.

Vernon Vickery took the stand and testified that he and Bauknecht, the owner, had agreed that the car was to be given to him (Vickery) for his summer's wages but that it should be stolen, because Bauknecht wanted to evade paying the notes he had given for the car and because he was afraid that his sisters would not like it if he gave Vickery the car. He did not deny that he had called up his brother, Cecil, and told him to take the car to Wing and keep it for him, but testified that Bob Mohair took the car from the Bauknecht farm. Bauknecht positively denied having had anything to do with the taking of the car. The evidence showed that he offered $100 reward for the return of the car and paid that reward when the car was recovered, and that he had no insurance on the car. In view of these facts it seems scarcely credible that he would be a party to stealing the car from himself, when he must have known that he could not avoid payment of the notes on that ground and the transaction could result only in a loss to him. Vernon Vickery's testimony in various ways contradicted statements he had made previous to the trial. The jury were the judges of the credibility to be accorded to the witnesses, and we are satisfied they were fully justified in returning a verdict of guilty on the evidence presented.

It is contended by the plaintiffs in error that the record was not complete; that it did not show that the grand jury was impaneled and sworn and that an indictment was returned in open court. The People, on suggestion of diminution of the record and motion to supply, have supplied, on leave, the missing parts of the record, so that the record as it stands shows that the grand jury was properly empaneled and sworn and that an indictment was returned in open court. The record as it stands is sufficient.

It is also contended that the court erred in admitting evidence of statements made by each of the plaintiffs in er-

ror out of the presence of the other. An examination of the record discloses that when evidence of these statements was received the court limited it to the defendant making the statement, and the jury were instructed that the statements were to be considered as affecting such defendant only. No motion for separate trial was made. It was not error to admit evidence of such statements.

It is also urged that the State's attorney made prejudicial statements in argument. We have examined the record and find no prejudicial error in the arguments of the State's attorney. They appear to have been confined to what the State contended was proved either by direct testimony or by fair inference from facts and circumstances in evidence. The State's attorney has a right to make fair deductions and inferences from the testimony appearing in the record, and such is within the scope of proper and fair argument. *People* v. *Strauch,* 240 Ill. 60; *People* v. *Hagenow,* 236 id. 514.

Counsel for Cecil Vickery strongly urges that Cecil was not in the neighborhood at the time of the theft of the car and that there is no identification of him as the one who took the car. The evidence shows, however, that he was found with the car in his possession at the McKinley farm an hour or two after it was taken, and at that time he was dressed in the manner of the person whom the witness Spies testified he met near the Bauknecht farm. Spies' description of the man he met likewise tallies with the size and weight of Cecil Vickery. We are satisfied that the jury were justified in concluding that Cecil Vickery was the one who took the automobile from the Bauknecht farm.

Objections are made to admission of certain testimony and errors are alleged as to instructions to the jury, but we are convinced, on reading the abstract, that there is no reversible error in the record.

The judgment will therefore be affirmed.

*Judgment affirmed.*